Good morning and may it please the court. I'm Charles Martin of Decatur, Georgia. I'm here representing Melissa Storey. Ms. Storey claimed disability benefits based on pain in her low back and hip and ALJ disagreed with her description of her The question before the court is whether the ALJ's decision rests on mistakes of fact and omissions of fact and application of the wrong legal standards. We pointed out in the briefs a number of facts that the judge was mistaken about. The judge believed that she had returned to work in reliance on a history in one of the treatment notes when she was receiving cancer therapy that referred to her history and her return to work after her diagnosis. The judge mentioned it three times in his decision but didn't mention that the same paragraph verbatim appeared three times in the record at months apart making it very unlikely that the verbatim history was the same. In fact, each of those paragraphs referred to another physician as having been the author of it rather than the person writing that record. The judge also made a mistake of fact in that he believed that there that no physician had ever said that she needed hip surgery when in fact they have said she needed hip surgery but she needed to lose weight first. The judge also omitted a lot of the facts that she had a negative straight leg raising. He didn't mention the positive straight leg raising. These are things that can change over time. Things like weakness. He didn't mention the radiculopathy which is an indication of nerve root compression. He didn't mention the MRI that was she couldn't afford an MRI when she went to see the orthopedist but they they took one as part of her cancer therapy and that showed that there was nerve root compression. That's something the didn't mention when rejecting her pain. So it's improper for an ALJ to look at the evidence that that doesn't tend to support the pain and rely only on that without at least acknowledging the evidence that does support it and trying to resolve those differences. In this case we have medical opinions by doctors who actually knew her and treated her. No doctor who ever saw her disagreed. The only person who disagreed was the judge and and it seems like... The problem is that both Dr. Reed and Dr. Powell's conclusions are inconsistent with their treatment records and the ALJ in that instance is entitled to discount their opinions. He absolutely would be if they found some inconsistencies. Now the were inconsistent but in fact... Let's talk about for example Dr. Reed. Dr. Reed's medical source statement asserts that your client can lift at most 10 pounds and instructs her to never stoop, squat, or bend but a treatment record prepared on the same day says he told her not to avoid any excessive bending, stooping, or heavy lifting and to limit lifting to 20 to 30 pounds maximum. That's inconsistent. It could be interpreted as inconsistent except when you look at the actual opinion. What the doctor actually was answering was not what can she do when she feels like it. He was asked what can she do in a work setting. It's different. The amount of weight that you can lift, the amount of standing you can do, it's different if you're required to do it at somebody else's schedule, at somebody else's bidding. So the problem in this case is it seems that the judge is applying the wrong legal standards. Social Security disability is supposed to be based on the way that the individual responds. It's the individual's experience of their disability and yet the judge doesn't talk about her experience. He doesn't. He says, oh, well, she had optimal relief from her pain. That's an actual statement in the treating of the pain management physician's notes when they're talking about what kind of pain medication changes they should make and he mentions that several times but what he doesn't mention is in that same record the doctor asked her, how's your pain doing? She says, well, my back is an 8 out of 10. My hip is 10 out of 10. The doctor says the pain medications are not working. Does the ALJ mention any of that? No, he doesn't mention any of that. He's applying an objective standard. He says, oh, there's not the kind of treatment that I would expect or that one would expect. I'm not sure who expects it. There's nothing in the regulations about the kind of treatment you have to have in order to qualify. There's all through the record, it says she couldn't afford to get an MRI. She couldn't even afford to get her cancer treatment or cancer well visits to find out if her cancer's returned and yet the judge is complaining she didn't have the kind of treatment that the judge expected. Well, there's no requirement that she have the money and the ability to get it. She said she does have insurance. She can't afford $5,000 copay. When the judge says, well, you're not getting the kind of treatment that I think you should get, he's converting what should be a standard based on her actual response to the pain she's experienced into an objective one. Well, this court decided way back in its retirement board that it's improper to require objective evidence of the pain itself. The Social Security regulations don't require that. The statute doesn't require it. You have to have objective evidence of the underlying condition that can produce the pain complained of. The judge in this case found she did have that. So to require additional objective evidence to require something beyond that to prove her pain is simply improper. And to rely on non-examining record reviewers who looked at only part of the records, who didn't see some of the later records, who never saw Dr. Reed's opinion, who never saw the later diagnosis with it's not substantial evidence to rely on a record reviewer alone where there's not other evidence to support what the record reviewers found or what they said. In this case, there's not. It looks like the judge in his interpretation of the record is he's saying what I see in this medical record just isn't enough for me. This court has repeatedly said that ALJs are not physicians. They can't arrive at their own independent medical conclusions. They can look at consistencies and inconsistencies in the record, but when they do that, they really need to look at the consistencies that help the claimant too. In this case, the judge didn't mention the fact that both of the treating doctors that gave her pain, they weren't identical, but they both clearly accepted that she had that degree of pain, that she had a severe degree of pain. So did the pain management doctors. So did Dr. Kelly, the consulting orthopedist that her treating orthopedist sent her out for an exam by. He's the one that said, look, she needs a hip replacement. That was the recommendation that the judge overlooked. Unless Corey has further questions, I think I'll save the rest of my time for rebuttal. Thank you. Mr. Keegan. Hello, I'm Owen Keegan, and I'm arguing on behalf of the Commissioner of Social Security. Substantial evidence supports the ALJ's finding that claimant's back and hip conditions were not disabling. As the ALJ noted, claimant's conditions responded to medication management, and although Dr. Wayne Kelly, a consultative orthopedic surgeon, recommended that claimant proceed with the hip replacement before treating her back condition in February 2015, claimant testified at her oral hearing in November 2015 that she was told a hip replacement would not work due to her age. Claimant alleges her conditions did not respond to treatment, but a review of the record shows that they did. For example, in July 2014, she reported to her family doctor, Dr. Powell, that she experienced 10 out of 10 in her lower back. But proceeding from then, she received pain treatment through injections and prescriptions for morphine, hydrocodone, and ibuprofen. By the time of her hearing in November 2015, she reported that her pain was only a 5 out of 10. Let me ask you something. I'm not sure whether the errors here warrant remand. They may and they may not. But there are some errors here. For one thing, the discussion of the 404.1527C factors, when I read through that opinion, I can't tell, for example, that the ALJ even recognized that Dr. Reed was Ms. Story's treating physician, you know, let alone that he had had a long-term relationship with her. Is there something, and that's not the only one of those factors that seems to be lacking. The ALJ also does not appear to have considered, at least from my review of the decision, that Dr. Reed is a specialist in orthopedics. And so, obviously, that would affect the weight given his opinion with respect to considered that Dr. Reed's opinion was consistent with Dr. Powell's opinion. So, those, you know, those would be those factors, the regulatory factors. I don't know if you want to address that. Sure. The ALJ did discuss Dr. Reed's treatment notes. I agree he didn't refer to Dr. Reed as a treating physician in weighing the opinion, but he did precede the discussion of Dr. Reed's opinion with a discussion of treatment notes. I mean, I... Like, when I looked at it, it looked to me like he thought there's only a discussion of one of Dr. Reed's visits, right? So, like, maybe the ALJ was under the mistaken impression for some reason that Ms. Storey went to Dr. Reed once. Is there something in the record that you think suggests otherwise as far as the ALJ's interpretation of the evidence? Not that I'm aware of, but the treatment with Dr. Reed was fairly recent when he issued his opinion. So, in terms of the ALJ's review of the opinion, I think he was just taking it chronologically. That is true, but then there were also later visits as well. That's true. I think the ALJ weighed the opinion as, you know, as part of his analysis. I think he took into account that she was seeing doctors for her orthopedic conditions, but he didn't use the specific words treating physician in his weight, but he did apply the treating physician standard. He did look at it and give good reasons for discounting it, multiple reasons. His discounting was because the opinion about limitations was inconsistent with the treatment records? Correct, as well as conclusively... the fact that there were treating records, right? That's fair. I mean, I took it that he was weighing it as a treating physician when I was reading it. I didn't note that it felt like he was discounting this as a consultative opinion in his discussion of the evidence. And as Judge Pryor noted, there is inconsistencies between Dr. Reed's treatment notes and his opinion. What do you say in response to your friend's argument that, well, you know, there's a difference between in your own personal life, if once in a blue moon, you need to bend down because you drop something or something like that, and having a work position that requires you on a regular basis to stoop or whatever. I mean, do you think there's a difference in that? Do you want to respond to that argument? Well, I do think that in Dr. Reed's treatment note in which he recommends that claimant not lift more than a maximum of 20 to 30 So even if you were to say he was thinking about different things when he wrote them, he certainly didn't restrict claimant from returning to work. And he didn't tell her that if you're required to do a job that involves lifting 20 pounds, excuse me, on a frequent basis, that you should not do that. So I appreciate that there are different purposes for the different claimant could never lift 20 pounds and that that limitation went back to May of 2014 in his opinion. Yet in June 2014, he had two separate treatment notes saying she could lift up to 20 to 30 pounds. I think that's a glaring inconsistency between what he said in the opinion at the behest of claimant for her disability benefit application and what he was writing in her treatment notes at the time he was treating her. Did the ALJ consider all her impairments in combination? I believe that the ALJ did. This case is really limited to her physical conditions. So I think in talking about focusing on her hip and back condition, the ALJ did discuss the various imagings and treatment for those conditions. I think the ALJ also took into consideration her mental conditions in discussing all of this, particularly in discussing her subjective complaints near the end of his RFC determination, especially the findings that she returned to work that was, although counsel's correct that it was repeated three times, one of those times it was in reference to the mental condition that she was able to return to work. So the return to work was actually used at two different points. And I do believe the ALJ did consider in combination all of her impairments. Though the return to work does appear to be an error. I mean, it was, it appears three times with different people having written it in the same kind of format. It appears that, you know, these electronic records, for some reason, it just wound up getting reprinted out again. I mean, do you have any indication that that's not the case? It does, that's what it looked like to me. Well, there are treatment notes from this same medical group that predate the August 2014 note that includes the return to work statement. And those previous notes don't have the return to work statement in them. Additionally, she was going to physical therapy. And the note says that she was returned to work and was lifting more than she previously had. There's a possibility that that was a reference to something to that extent. But the real import, I think, is that it was present in that note. Those doctors were reading that at the time. They were saying that she was doing very well after her cancer treatment. And no doctor went in to correct that and felt like it was incorrect. I think the ALJ made a reasoned decision to look at that and say some of her physicians at that time were noting or at least willing to allow into her treatment notes statements that she had the ability to work or return to work. Mr. Keegan, I thought there were two issues in this First was whether the ALJ failed to accord controlling weight to the two treating physicians' opinions. Issue one. Yes. We've got this inconsistency issue, which the evidence is either there or not. And the second issue was whether the ALJ erred in determining that the claimant's testimony about her subjective symptoms was not credible. Those are the two issues, aren't they? Yes. Are those the only issues before us? I believe so, yes. But I think what your colleague was arguing was that the three statements about returning to work were relied upon by the ALJ as a part of why he found her not to be credible. There were other reasons why he also found her not to be credible. But that was one of the reasons, right? That's how we get to that part of this discussion. Yes, yes, yeah. And that was, as you said, that was one of a number of reasons. You know, even if that was maybe not the best reason that the ALJ gave, it was it was, you know, not the only and certainly not the strongest reason. I think the ALJ started off in discussing the medical evidence that showed that her conditions were not as limiting as she alleged. And, you know, that medical evidence supported his discounting of the treating physician's opinions as well. So is it your position that even if the ALJ was wrong, even if these notes about returning to work were incorrect and the ALJ was wrong to rely on them, it wouldn't, it would have been harmless error. It wouldn't have made a difference in his determination that she was not credible. Is that what your position is? I would agree to that. I don't think that the ALJ was demonstrably erroneous in relying on those statements. I think that there's ambiguity as to whether they were correct, what it was even referring to, whether the physicians who were writing those treatment notes were aware of that in writing the notes. But I would agree that if it was incorrect, it wouldn't warrant remand in this case. I think it was just one of a number of things the ALJ relied on. And it wasn't something that the case hinged on particularly. If there had really been a return to work, that would have been a separate issue that the ALJ would have focused on in terms of finding substantial gainful activity. I don't think he thought that the return to work was of major importance in determining whether her subjective complaints were consistent with the record. I think it was just one of a number of things that he noted in reviewing the record that led to his conclusion that she retained the residual functional capacity to perform a reduced range of light work. Did the non-examining physicians review all the relevant medical information? Up to the point that they, you're talking about the state agency consultants prior to the ALJ hearing, that they reviewed it up to February 2015, which was when the second state agency consultant reviewed the record. I do believe they reviewed most of the evidence that is pointed to by counsel such as the lumbar MRI and the orthopedic treatment notes leading up to February 2015. There was some additional treatment notes that included the state agency's February 2015 opinion, but those treatment notes I believe are consistent with the ALJ's finding. A number of them are from the pain specialists who found, or who said in the treatment note things that, such as claiming could live independently, cook, clean the house, drive. They found full movement in all extremities, 5-5 strength in muscles. She was reporting high levels of pain during portions of 2015, but by the time she testified at the hearing in November 2015, she reported only a 5 out of 10 in pain. I think one of the key elements of the medical record showed that she stopped taking morphine at her request and started reporting higher levels of pain, but she was placed back on morphine by her pain doctors, and shortly after that she reduced the number of visits to physicians, and I think that shows that while she did experience pain during a portion of 2015, I think she was receiving treatment and the treatment was effective. I mean, just objectively, it's hard to imagine having, you know, being on morphine and working. Just, I mean, it's not, it's neither here nor there, but I mean, it just does seem, does that not strike you as unusual? I've never taken morphine. I really don't know, but... I mean, just what you know that morphine is supposed to do. I mean, it's a narcotic. Right. That's all right. That is just an observation. It's treatment for pain. She received treatment for pain. She does have an impairment. The physicians noted that, but she did respond to the pain treatment, and I see I'm over my time. Thank you. I apologize if my approach muddled the fact that we raised two issues. It's just that the judge relied on many of the same errors and omissions in both of his errors, both erroneously rejecting the medical opinions and rejecting her, Ms. Story's, credibility. I do want to correct a statement you made, Judge Pryor, about the first error alleged, though. It was not just that the judge failed to give controlling weight to the two treating physicians. It's that he failed to properly evaluate them after finding they were not trying to... That's implicit in it. I mean, your argument, as I understand it, is that he should have given them controlling weight. He was wrong to discount their opinions as being inconsistent with the treatment records, right? Well, I also want to go back to that issue because I'm reading the judge's description of why he rejects Dr. Reed. He doesn't say it's inconsistent with the treatment records. He doesn't say that. What he says is, undersigned accords a little weight to the medical assessments and opinions of Dr. Reed because the opinion expressed is quite conclusory. In other words, I'm not looking at the rest of his records and the fact that he had an MRI and he sent out for consultative exam that provided very little explanation of the evidence relied on. He said right there, look at my medical records. In the form, he referred to the medical records. So it's really not conclusory and he didn't say it was inconsistent with the records. He said it was conclusory and it wasn't very well explained. He said the doctor's own reports failed to reveal the type of clinical laboratory abnormalities and yet the judge didn't mention the fact that there was nerve root impingement on the MRI. He didn't mention the fact that she had radiculopathy from her lumbar disc that was causing pain to go down to her foot. So yes, the judge did look at some things. He did point out lots of times in the medical records where certain tests were negative, where they didn't show certain symptoms. He just didn't mention the other ones where they were positive findings, where they did show the symptoms. And our position is, he's got to consider both. You can't just evaluate the evidence that supports your conclusion. You have to and the court has to look at the reasons that the judge gave, not just any reason that the government can come up with in their brief, but this is what the judge said. He said you didn't explain it well enough. As for the physicians that the judge did think were credible, no, they didn't see all the evidence. They didn't know that there had been a diagnosis of radiculopathy because that was not in the records they reviewed. They didn't know that Dr. Reed had the opinion that he had because they never saw his opinion. They didn't know that he had referred her out to pain management. They didn't know that another orthopedist that Dr. Reed had sent her to for a second opinion said she needed a hip replacement. So they didn't have anywhere close to all the evidence. I would suggest that the doctors who treated her knew her best and that the judge is just simply imposing an objective evidence standard in replacing the standard with objective requirements. Thank you. Thank you, Mr. Martin. We will be in recess until tomorrow morning.